No. 2582

Second Circuit

———

GUILLOTTE v. LEE LUMBER COMPANY

———

(June 2, 1926. Opinion and Decree.)
(June 30, 1926. Rehearing Refused.)

———

*(Syllabus by the Court.)*

1. **Louisiana Digest—Appeal—Par. 625.**

The decision of the trial court on matter of fact will not be disturbed unless clearly erroneous.

Jahncke Service Inc. vs. Hewson, 1 La. App. 22.

Appeal from the Ninth Judicial District Court of Louisiana, Parish of Rapides. Hon. R. C. Culpepper, Judge.

Action by Adolph D. Guillotte, for the use of Walter A. Guillotte, against Lee Lumber Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Julius T. Long, of Shreveport, attorney for plaintiff, appellant.

Overton & Hunter, of Alexandria, attorney for defendant, appellee.

## STATEMENT OF THE CASE

REYNOLDS, J. This is a suit to recover compensation under Clause (d) of Subsection 1 of Section 8 of the Workmen's Compensation Law, for the breaking of two bones just above the ankle in the left leg of plaintiff's son, Walter A. Guillotte, which, it is alleged, rendered him a permanent cripple and unable to do work of any reasonable character.

Defendant denied liability on the ground that it had paid plaintiff's son full compensation during his disability and that he had completely recovered from his injuries and was now able to do work of any reasonable character.

On these issues the case was tried and there was judgment in favor of the defendant and plaintiff appealed.

## OPINION

Under an order of the District Court, Doctors Simmons, Stafford and Rand were directed to make a physical examination of plaintiff's son and report their findings to the court. Doctors Simmons and Rand made such examination and reported to the court as follows:

"In compliance with your order . No. 16,996, dated September 28, 1925, the undersigned have examined Walter A. Guillotte, of Tioga, Louisiana, who claims to have been injured at the plant of the Lee Lumber Company, Limited, on or about November 7, 1924, resulting in fracture of the left leg above the ankle joint.

"Examination of this injured member shows it to be the same length as the opposite leg; there is a tendency to flat foot in both feet which is slightly more marked in the left foot; the ankle joint of the left foot is slightly larger than the right; there is no limitation of motion in this joint; there is no apparent pain when the joint is moved in any direction; there is good union at the old site of fracture and the bone fragments are in good alignment.

"Answering the questions of the court specifically, we believe:

"(1) That there is no serious or permanent injury or impairment to the bones, ligaments and nerves of the ankle joint and foot;

"(2) That he will not be rendered a serious and permanent cripple in said ankle joint and leg;

"(3) That he is able to do work of reasonable character;

"(4) We also beg to report that Walter A. Guillotte is not now a cripple and that his ankle now functions normally and that he can do work now as well as before the accident and injury."

Doctors M. L. Adair and E. L. Sanderson also made a physical examination of plaintiff's son and testified as follows as to his condition:

Doctor Adair testified, pages 15 and 16:

"On physical examination the ankle is normal in appearance with slight limitation of motion as compared with the right foot. The X-ray examination taken, both anterior, posterior and lateral, shows what

appears to be an old fracture of the internal and external malleoli, with position and union good. On the lateral side of the ankle, in apposition to the shaded surface of the lower end of the fibula, there is roughening of the fibula showing an arthritis, probably chromatic. On the anterior, lower aspect of the tibia, there is a roughening as in arthritis. Otherwise negative. This roughening could readily account for the pain complained of by Mr. Guillotte, which he says comes on when he uses the ankle for any length of time, and subsides with rest.

"Q. What of the probabilities of his injuries or impairments getting better than they are today, taking into consideration the fact that he was injured on November 7, 1924?

"A. From the amount of roughening of the bone surface, I believe that the joint disability, even though the arthritis goes no further than at present, will probably be permanent. A slight improvement of a temporary character may occur after rest with exacerbation after use.

"Q. Could such a break, as indicated in the X-ray plate which you were just reading from, and the disabilities you find there—or can you in an ordinary case with such a break or disability reasonably expect a permanent serious disability?

"A. No.

"Q. Is his case out of the ordinary for such a break?

"A. It is.

"Q. In what respect?

"A. This arthritis is unusual. The union is good; the bones are in perfect apposition; and normally you would expect a perfectly good ankle following a fracture with union. With this arthritis present you cannot get a normal ankle.

\*   \*   \*   \*

"Q. Will you say, taking everything into consideration, from what you know or have learned about his case, particularly your X-ray examination, that you think that it is entirely probable that he has a serious, permanent impairment there in that ankle?

"A. I do."

Doctor Sanderson testified, pages 18 and 19:

"Q. Doctor Sanderson, have you had occasion to examine the left ankle and X-rays made thereof by Doctor Adair of one Walter Guillotte on yesterday?

"A. I did.

"Q. Please state your findings under that examination, and the disabilities, if any, that you found?

"A. Well, this young man seemed to be in fairly good health and normal in every respect, except the left ankle. The left ankle shows an enlargement over the lower end of the fibula and there is limited motion about the ankle joint and a slight general enlargement of the whole joint with tenderness on motion and pressure. These are the physical facts.

\*   \*   \*   \*

"It would appear that he has had an old fracture of the lower end of the fibula and there appears to be some callous thrown out about this point of fracture which is immediately opposite to the ankle joint. This roughening seems to extend into the ankle joint and there is evidence of arthritis of the ankle joint or inflammation of the ankle joint.

"Q. Is that evidence of arthritis sufficient to cause a serious, permanent impairment of that joint?

"A. It is.

\*   \*   \*   \*

"Q. On the whole, would you say that it is a serious, permanent impairment?

"A. It is serious in this respect. The injured bone, right at the joint, and you might say in the joint, has created a place of least resistance and it is my opinion that some infection of the body has located itself about this joint because of this lowered resistance because the X-ray shows an arthritis, and arthritis is due to infection; and this arthritis may progress and become very serious as time goes on, and there is no way to estimate now just how much damage will be done. But at any rate, whatever is done will leave its imprint as long as he lives."

J. E. Byrne, defendant's yard foreman and shipping clerk, testified, page 44:

"Q. In what position were you working?

"A. I was yard foreman and shipping clerk.

\*   \*   \*   \*

"Q. Did Walter A. Guillotte work under you after he resumed work?

"A. Yes, sir.

"Q. Please state whether or not he worked as well and efficiently after he resumed work as he did before he broke his ankle?

"A. Well, I could not tell any difference. He worked for me off and on for maybe two or three years, and if there was any difference in his work I could not tell it.

"Q. Did he work about as regularly after he resumed work as he did before he was hurt?

"A. Yes, sir, as far as I know, he did. I could not see any difference."

From this evidence it is clear that no one has ventured to say that Walter A. Guillotte received injury that prevents him from doing work of a reasonable character.

The district judge who tried the case saw and heard Walter A. Guillotte testify and saw his movements in the court room and rendered judgment in favor of the defendant.

From all the evidence in the case we cannot say that Walter A. Guillotte received such permanent injuries as to prevent him from doing work of a reasonable character. We are therefore of the opinion that the judgment of the District Court is correct and accordingly it is affirmed.